IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

DANIEL SORACE and                                    *
MICHELLE SORACE,
2918 Greenway Drive                                  *
Ellicott City, Maryland  21042,
                                                     *
        Plaintiffs,
                                                     *
v.
                                                     *   Civil Action No.: _____

ST. AGNES HEALTH CARE, INC.,                         *
d/b/a ST. AGNES HOSPITAL
900 Caton Avenue                                     *
Baltimore, Maryland  21229,
                                                     *
   Serve On:
        Jeffery M. Pecore                            *
        Suite 202W
        9123 Old Annapolis Road                      *
        Columbia, Maryland  21045,
                                                     *
        Defendant.                                   *

*****ooo0ooo*****

## COMPLAINT

Plaintiffs, Daniel Sorace and Michelle Sorace, by their undersigned counsel, sue

Defendant St. Agnes Health Care, Inc., d/b/a St. Agnes Hospital, and state:

## PRELIMINARY STATEMENT

1.      Mr. Daniel Sorace and Mrs. Michelle Sorace ("Plaintiffs"), deaf individuals, bring

this lawsuit against St. Agnes Health Care, Inc. d/b/a/ St. Agnes Hospital ("Defendant") alleging

violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189, and

section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794.  In May 2007,

Mr. Sorace was a patient at St. Agnes Hospital.  Plaintiffs requested but were denied sign

language interpreter services and were thus unable to communicate effectively with Defendant's

medical personnel during the time interpreter services were not provided.  Defendant refused to

accept Mrs. Sorace's telephone call made through video relay services.  Defendant also refused

to make an orthopedic appointment for Mr. Sorace because he is deaf and refused to provide

interpreter services for the requested appointment.  Plaintiffs bring this lawsuit to compel

Defendant to cease unlawful discriminatory practices, and implement policies that will ensure

effective communication and an equal opportunity to participate in and benefit from Defendant's

health care services.  Further, Plaintiffs seek compensatory damages, attorneys' fees, and costs.

## THE PARTIES

2.      Plaintiffs, Mr. Daniel Sorace and Mrs. Michelle Sorace, live at 2918 Greenway

Drive in Ellicott City, Maryland.

3.      Defendant, St. Agnes Health Care Inc., d/b/a St. Agnes Hospital ("St. Agnes") is a

private not-for-profit organization that owns, operates, and/or leases a 323-bed community

hospital located at 900 Caton Avenue in Baltimore City, Maryland.

## JURISDICTION

4.      This court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and

42 U.S.C. § 12188.

## FACTUAL ALLEGATIONS

5.      Plaintiff Daniel Sorace is deaf.  He is substantially limited in the major life activities of hearing and speaking.

6.      Plaintiff Michelle Sorace is deaf.  She is substantially limited in the major life activities of hearing and speaking.

7.      Deaf-Talk is a remote sign language interpreter service provided through video conferencing equipment.  Deaf-Talk consists of an interpreter who sees a deaf person signing through use of a video camera while the interpreter signing can be seen by the deaf person on a video screen.  The interpreter hears people speaking through a microphone in the room and the interpreter's voice is conveyed through a speaker system.

8.      Video relay service ("VRS") is a form of telecommunications relay service that enables deaf individuals to communicate with voice telephone users through video equipment installed at the deaf caller's location and at the relay center. A video link between the deaf caller and a VRS interpreter allows an interpreter to interpret a deaf caller's sign language and relay the conversation to a voice caller. The VRS interpreter also interprets the voice caller's speech to sign language and relays the conversation to the deaf caller.

### May 2007 Hospitalization

9.      On May 26, 2007, Mr. Sorace fell off his roof and suffered injuries, including a broken nose, shattered heel, facial lacerations, and a fractured left elbow.

10.      After neighbors called 911, two Emergency Medical Technicians ("EMTs") took Mr. Sorace to St. Agnes Hospital.

11.     Mrs. Sorace accompanied Mr. Sorace to St. Agnes in the ambulance.

12.     At the Soraces' house and in the ambulance, Mrs. Sorace repeatedly asked the

EMTs to call St. Agnes hospital and request that a sign language interpreter be present when they

arrived at the hospital.

13.     Upon arriving at St. Agnes at approximately 1:30 p.m., Mr. Sorace and

Mrs. Sorace were taken to the reception area to wait to be seen by a physician.

14.     When Plaintiffs arrived at St. Agnes, Mrs. Sorace asked an EMT to request a sign

language interpreter for herself and her husband, and the EMT made the request to the

receptionist of the emergency department.

15.     St. Agnes emergency department personnel did not treat Mr. Sorace until

Mrs. Sorace screamed in fear and frustration because Mr. Sorace advised her that he was

choking. Mrs. Sorace wrote a note to the EMT, who then informed a nurse that Mr. Sorace was

choking on his own blood and could not breathe.

16.     After the EMT left the area, Mrs. Sorace asked a St. Agnes receptionist for an

interpreter.

17.     At approximately 2:00 p.m. Mr. Sorace was taken into a room in the emergency

department to be seen by a physician; however, Defendant did not provide sign language

interpreter services at that time.

18.     Wen Mr. Sorace was taken to the emergency room and while he was there, he was

on a stretcher, strapped down on top of a board and wearing a neck brace.  Both of Mr. Sorace's

arms were strapped to the board, and the fractured elbow made one of his hands useless.

Therefore, Mr. Sorace was only able to move his right hand.

4

19.     Mrs. Sorace informed a nurse who came to the room that an interpreter was needed to facilitate effective communication and the nurse left the room.

20.     When the nurse did not return, Mrs. Sorace went to look for a nurse to follow-up on her request for an interpreter.  Mrs. Sorace found another nurse and again asked when an interpreter would arrive.

21.     After Mrs. Sorace returned to her husband's room, a nurse came into the room and wrote in a note to Mrs. Sorace that St. Agnes staff was not allowed to get an interpreter without specific authorization from St. Agnes administration.  The nurse further wrote Mrs. Sorace that the emergency department staff was unable to contact anyone who could authorize an interpreter.

22.     St. Agnes staff brought Deaf-Talk equipment into Mr. Sorace's room, and placed it at the foot of Mr. Sorace's bed.  Staff attempted unsuccessfully for fifteen minutes to use the Deaf-Talk equipment.

23.     While St. Agnes employees were trying to get Deaf-Talk to work, Mrs. Sorace informed nurses in the room that Deaf-Talk would not provide effective communication for Mr. Sorace.  Mr. Sorace could not see the TV as he was on a stretcher, facing the ceiling, strapped down on top of a board, and constrained by a neck brace.  The interpreter via the camera would not be able see both Mr. Sorace's head and right hand.  Mrs. Sorace again requested a sign language interpreter for her and her husband and St. Agnes staff removed the Deaf-Talk equipment from Mr. Sorace's room.

24.     During the time between 2:00 p.m. and 7:00 p.m. on May 26, 2007, Mr. Sorace was taken in and out of the room for various tests, including CAT scans.  Defendant failed to

provide sign language interpreter services during this time.  St. Agnes did not ensure effective communication between Mr. and Mrs. Sorace and medical personnel during this time and for these tests.

25.     Because of a lack of effective communication, Mr. Sorace's pain was not being addressed and Mrs. Sorace did not know from St. Agnes medical personnel the status of her husband's medical condition.

26.     Mrs. Sorace contacted a friend who then contacted Rachelle Flemming, who arrived at St. Agnes at 7:00 p.m. on May 26, 2007, to provide interpreter services.

27.     Ms. Flemming served as an interpreter until 11:00 a.m., May 27, 2007.

28.     St. Agnes did not provide qualified interpreter services to ensure effective communication between Plaintiffs and Defendant's medical personnel until 11:00 a.m. on May 27, 2007.  The hospital then provided an interpreter for the next three days while Mr. Sorace was in the hospital.

Denial of Orthopedic Specialist Appointment

29.     During Mr. Sorace's stay at the hospital, Dr. Sam Sydney, a surgeon, gave Mr. Sorace the phone number of St. Agnes's orthopedic clinic and advised him to schedule an appointment with an orthopedist in the clinic.

30.     When Mrs. Sorace first called the Defendant's orthopedic clinic from home through video relay services to make an appointment, the person answering the phone stated that St. Agnes's orthopedic clinic did not have a procedure for handing calls through relay services. The person then hung up.

6

31.     Mr. Sorace and Mrs. Sorace then called St. Agnes's orthopedic clinic from within St. Agnes, using an interpreter provided by the Defendant.

32.     The interpreter called Defendant's orthopedic clinic.  The interpreter explained that she was calling and interpreting for Mr. Sorace.  Mr. Sorace, through the interpreter, requested an appointment and requested interpreter services for the appointment.  Defendant's personnel refused to provide an interpreter and refused to make an appointment and hung up the phone.  The interpreter tried to call multiple times, and the person answering the phone repeatedly hung up.

33.     Mrs. Sorace then had a nurse at St. Agnes call St. Agnes's orthopedic clinic and request an appointment.  However, when the nurse called, the person who answered the phone refused to make an appointment, hanging up on the nurse as soon as she realized that the appointment was for Mr. Sorace.

34.     Mrs. Sorace then contacted an orthopedic doctor she located independently. The orthopedic doctor provided interpreter services at all appointments for Mr. Sorace.

## COUNT I

### TITLE III OF THE AMERICANS WITH DISABILITIES ACT OF 1990

35.     Plaintiffs, Mr. Sorace and Mrs. Sorace, repeat and re-allege paragraphs 1 through 34 in support of this claim.

36.     Plaintiffs, Mr. Sorace and Mrs. Sorace, are individuals with disabilities under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(2).

37.     Defendant is a public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

38.     Defendant has discriminated against the Plaintiffs on the basis of their disabilities by denying the Plaintiffs auxiliary aids and services to ensure effective communication between the Plaintiffs and medical personnel of St. Agnes, refusing to accept a telephone call made through a telecommunications relay service, and refusing to treat Plaintiff, in violation of Title III of the ADA, 42 U.S.C. §§ 12181-12189.

## COUNT II

### SECTION 504 OF THE REHABILITATION ACT OF 1973

39.     Plaintiffs, Mr. Sorace and Mrs. Sorace, repeat and re-allege paragraphs 1 through 38 in support of this claim.

40.     Plaintiffs, Mr. Sorace and Mrs. Sorace, are qualified individuals with disabilities under section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

41.     Defendant has discriminated against the Plaintiffs, on the basis of their disabilities by denying the Plaintiffs auxiliary aids and services to ensure effective communication between the Plaintiffs and medical personnel of St. Agnes, refusing to accept a telephone call made through a telecommunications relay service, and refusing to treat Plaintiff, in violation of section 504.

## RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court provide the following relief:

a.     Issue a declaratory judgment that Defendant's policies, procedures, and practices have subjected Plaintiffs to discrimination in violation of Title III of the Americans with Disabilities Act and section 504 of the Rehabilitation Act of 1973;

b.     Enjoin Defendant from any policy, procedure, or practice that will deny Plaintiffs equal access to and an equal opportunity to participate in and benefit from Defendant's services or that denies Plaintiffs effective communication with Defendant;

c.     Order Defendant to promulgate and comply with policies and procedures to ensure that Defendant does not discriminate against Plaintiffs and individuals who are deaf and hard of hearing in the future;

d.     Order Defendant to provide and pay for qualified interpreter services when necessary to ensure effective communication with Plaintiffs and individuals who are deaf or hard of hearing in all services offered by Defendant;

e.     Order Defendant to train all employees about Plaintiffs' rights and the rights of individuals who are deaf or hard of hearing and about Defendant's policy and procedures for providing auxiliary aids and services, including providing qualified sign language interpreters and accepting telephone calls made through telecommunications relay services;

f.     Order Defendant to notify individuals who are deaf or hard of hearing of their right to effective communication, how to request qualified interpreter or other services, and how to file a grievance;

g.      Award compensatory damages;

h.      Award reasonable costs and attorneys' fees; and

i.      Award any and all other relief that may be necessary and appropriate.


Respectfully submitted,


_____
Joseph B. Espo (Fed. Bar No. 07490)
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Suite 1700
Baltimore, MD 21202
(410) 962-1030
jbe@browngold.com

Marc Charmatz (Fed. Bar No. 09358)
Rosaline Crawford (Fed. Bar No. 15643)
Renee F. Williams, Student Attorney**
Eric M. Fung, Student Attorney**
National Association of the Deaf
Law and Advocacy Center
8630 Fenton Street, Suite 820
Silver Spring, Maryland 20910
(301) 587-1788

*Attorneys for Plaintiffs*

Date:  April 29, 2008


**Practicing Pursuant to Rule 16 of the Rules Governing Admission to the Maryland Bar.


## JURY DEMAND

Plaintiff hereby demands that this action be tried before a jury.

_____
Joseph B. Espo

10